**Erick J. Haynie**, OSB No. 982482
**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, Oregon 97223
Erick@timberlinelawgroup.com
541.386.6478

**STINAR LANNEN, PLLC**

**Patrick C. Lannen**
280 West Maple, Suite 200
Birmingham, Michigan 48009
Patrick@StinarLannenLaw.com
Office: (248) 565-2690
Fax: (248) 565-2691

*Pro Hac Vice Application Forthcoming*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

**JANE TB DOE**, an individual,

Plaintiff,

v.

**APPLE, INC.**,

Defendant.

Case No. ________________

**COMPLAINT**

(Negligence; Product Liability; Unlawful Trade Practices)

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff Jane TB Doe ("Plaintiff") brings this action against Defendant Apple Inc. ("Apple" or "Defendant") for injuries arising from Apple's design, manufacture, marketing, and sale of the Apple AirTag® ("AirTag"), a consumer tracking device that Apple knew would be —

and has been — widely misused as a stalking tool. Apple released the AirTag in April 2021 knowing full well that its anti-stalking safeguards were inadequate to prevent the foreseeable misuse of the product for covert, nonconsensual location tracking.

2. Despite receiving over 40,000 stalking reports and repeated warnings from law enforcement agencies, domestic violence advocacy organizations, and the media, Apple has failed to implement adequate safeguards to protect victims of AirTag-facilitated stalking. Apple's piecemeal, reactive approach to safety has consistently prioritized product sales and market positioning over human safety.

3. As a direct and foreseeable result of Apple's failures, Plaintiff was stalked by her former romantic partner (the "Stalker") using a concealed AirTag placed under her vehicle. Despite using an iPhone — Apple's own product and ecosystem — Plaintiff received no notification from Apple alerting her to the presence of an unauthorized AirTag traveling with her vehicle.

4. Plaintiff's Stalker tracked her location on multiple occasions using the concealed AirTag, subjecting Plaintiff to stalking, property destruction, verbal and written threats, and severe emotional distress. The Stalker was ultimately charged with stalking using a GPS device under Oregon law, and a restraining order was issued against him.

5. Plaintiff brings this action asserting claims for Negligence, Product Liability (Design Defect), and violation of the Oregon Unlawful Trade Practices Act, and seeks compensatory damages, statutory damages, attorney fees, injunctive relief, and all other relief to which she is entitled.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

## PARTIES

6. Plaintiff is a natural person and citizen of the State of Oregon, residing in Medford, Oregon.

7. Defendant Apple Inc. is a corporation organized under the laws of the State of California, with its principal place of business at One Apple Park Way, Cupertino, California 95014. Apple is an American multinational technology company that designs, manufactures, markets, distributes, and sells consumer electronics, including the Apple AirTag. Apple is a citizen of the State of California for purposes of 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states — Plaintiff is a citizen of the State of Oregon and Defendant is a citizen of the State of California — and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant Apple Inc. because Apple conducts substantial and continuous business in the State of Oregon, including selling and distributing AirTags to Oregon consumers through its retail stores, authorized resellers, and online channels. Apple has derived substantial revenue from its Oregon operations and has sufficient minimum contacts with Oregon to support the exercise of personal jurisdiction consistent with due process.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Medford, Jackson County, Oregon, which is within the District of Oregon.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

11. This action is properly assigned to the Medford Division of the District of Oregon because the events giving rise to Plaintiff's claims occurred in Jackson County, Oregon.

## GENERAL ALLEGATIONS

***The AirTag and Its Known Dangers***

12. In April 2021, Apple released the AirTag, a small, standalone Bluetooth tracking device roughly the size of a United States quarter. The AirTag is marketed to help consumers locate personal items such as keys, wallets, and bags. It retails for approximately $29.00 per unit.

13. The AirTag uses Bluetooth Low Energy ("BLE") technology to communicate its location. It works by broadcasting a rotating identifier that is detected by nearby Apple devices, which then relay the AirTag's location to Apple's servers through the "Find My" network. The Find My network leverages over two billion active Apple devices worldwide to function as a massive mesh tracking network.

14. This means that an AirTag's location can be updated virtually anywhere in the world where Apple devices are present — which is to say, virtually everywhere. The network operates silently, without the knowledge or consent of the Apple device owners who serve as intermediary relay points.

15. Prior to the AirTag's release, numerous commentators, journalists, domestic violence advocates, and technology experts publicly warned that small, inexpensive Bluetooth trackers would inevitably be used as stalking tools. Apple was well aware of these concerns.

16. Internal Apple communications confirm that the company anticipated misuse of the AirTag for purposes of unwanted tracking. Apple's own marketing materials acknowledged the risk. Apple described the AirTag's anti-stalking features as designed to "deter as opposed to



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

prevent" malicious use — a candid admission that the product was knowingly released with inadequate safeguards.

17. Despite knowing the risks, Apple chose to release the AirTag in April 2021 with only minimal anti-stalking safeguards, including: (a) an audible alert that would sound only after three days of separation from its owner's iPhone; and (b) a notification system that would alert iPhone users — but not Android users — to the presence of an unknown AirTag traveling with them.

18. These measures were woefully inadequate. Three days without an alert gives a stalker more than enough time to track a victim's patterns, home address, workplace, and daily routine. Moreover, approximately half of all smartphone users in the United States use Android devices. At launch, these users had absolutely no way to detect an AirTag being used to track them.

19. Apple made a calculated business decision to release the AirTag despite knowing it was inadequately protected against misuse. Apple prioritized market timing and commercial gain over human safety.

***The Predictable Consequences***

20. Almost immediately after the AirTag's release in April 2021, reports of AirTag-facilitated stalking began flooding in from individuals who had been stalked, tracked, and terrorized through the misuse of AirTags. AirTags have been placed in wheel wells of cars, in purses, in jacket pockets, and in children's backpacks.

21. AirTags have facilitated stalking in domestic violence situations, enabling abusers to locate victims who have fled for their safety. Multiple murders have occurred in which the perpetrator used an AirTag to track the victim prior to the killing.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

22. In January 2022, multiple police departments issued public warnings about AirTags being used to track individuals without their consent, particularly being placed on vehicles. Despite these reports, Apple did not recall the AirTag. Instead, Apple issued a statement acknowledging that a "small number" of AirTags had been misused and promising future updates.

23. From April 2021 through April 2024, Apple received over 40,000 stalking reports related to AirTags, averaging over 1,000 complaints per month. Apple also knew that the vast majority of law enforcement complaints it received concerning AirTags involved stalking — nearly twenty times as many as any other category of crime. Apple's public characterization of stalking incidents as "rare" was deliberately misleading.

***Apple's Inadequate Response***

24. In February 2022, Apple announced that it would reduce the time before an unknown AirTag would emit a sound from three days to a random interval between 8 and 24 hours. Even this reduced interval provides a stalker with ample time to determine a victim's home address, workplace, and routine.

25. Apple's incremental, piecemeal approach to safety — implementing half-measures only after public outcry — demonstrates that Apple has consistently prioritized product sales over consumer safety.

26. Even for users of Apple's own iPhone operating system, the protections against unwanted AirTag tracking remain grossly inadequate. The "Item Safety Alerts" feature on iOS relies on algorithmic determinations that frequently fail to detect tracking in a timely manner. The alerts appear as standard push notifications that can be buried among dozens of other notifications,



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

swiped away accidentally, or simply not noticed. Apple does not provide iPhone users with real-time scanning capabilities.

27. The audible alert feature has proven particularly ineffective. The AirTag's speaker is small and produces a sound that is easily drowned out by ambient noise, particularly when the AirTag is hidden in a vehicle's wheel well or undercarriage. Moreover, instructions for disabling the AirTag's speaker are widely available online, and the AirTag remains functional even after its speaker has been disabled.

***Feasible Alternative Designs***

28. At all times relevant to this Complaint, alternative feasible designs existed that would have substantially reduced or eliminated the risk of AirTag-facilitated stalking without impairing the product's legitimate tracking functionality. These alternatives include but are not limited to:

a. **Identity Verification**: Apple could have required identity verification or account linking before activating an AirTag, creating accountability for misuse and deterring anonymous stalking.

b. **Tamper-Resistant Speakers**: Apple could have designed the AirTag with a louder, non-removable speaker that would sound immediately or within minutes — rather than hours or days — when separated from its owner, and that would render the AirTag non-functional if the speaker were disabled or removed.

c. **Reduced Alert Delays**: Apple could have implemented immediate or near-immediate alerts to both iPhone and Android users when an unknown AirTag is detected traveling with them.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

d. **Geofencing**: Apple could have implemented geofencing features that would automatically disable an AirTag's tracking when it remained in proximity to a non-owner's device for a defined period.

e. **Mandatory Re-Authentication**: Apple could have designed the AirTag to require periodic re-authentication by the owner, preventing indefinite passive tracking.

f. **Rate-Limiting Features**: Apple could have implemented rate-limiting features preventing a single user from deploying multiple AirTags in close proximity to a non-owner's device.

g. **Registration Systems**: Apple could have implemented a mandatory registration system linking each AirTag to a verified identity, enabling law enforcement to quickly identify stalkers.

h. **Cross-Platform Parity**: Apple could have released simultaneous and equivalent detection tools for Android users at the time of the AirTag's launch, rather than leaving half the population unprotected for years.

29. Each of these alternative designs was technologically feasible at the time of the AirTag's release in April 2021. Apple possessed the engineering resources and technical capability to implement them. Apple chose not to do so.

***Apple's Knowledge and Corporate Conduct***

30. Only weeks after the AirTag's release, Apple CEO Tim Cook was briefed on press reports describing the AirTag as "a new means of inexpensive, effective stalking." Cook was advised that Apple could weather the storm: "At this time, we are not seeing this narrative gain



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

steam in media or on social....” Rather than address the safety concerns raised in the press, Apple focused on managing the media narrative.

31. The Federal Trade Commission (“FTC”) has specifically identified location tracking devices as products requiring heightened safety measures. In multiple enforcement actions and policy statements, the FTC has emphasized that companies cannot disclaim responsibility for foreseeable uses of their products, particularly when that use was known to the company prior to the product’s release.

32. Multiple state legislatures have enacted or proposed legislation specifically addressing the misuse of Bluetooth tracking devices for stalking, further demonstrating that the risks posed by products like the AirTag are well-known and foreseeable.

33. Apple has generated billions of dollars in revenue from AirTag sales and the broader Find My ecosystem while externalizing the costs of its product’s misuse onto victims, law enforcement, and society at large. The low cost and wide availability of AirTags has democratized stalking, making it accessible to virtually anyone with $29 and an iPhone.

34. Apple has failed to provide meaningful support to victims of AirTag stalking. Apple routinely refuses to cooperate with victims seeking help prosecuting or obtaining restraining orders against their stalkers, regularly deletes pairing information associating stalkers with the AirTags they used, and gives victims only weeks to seek that information before it is destroyed. Apple’s own legal-process guidelines confirm that AirTag pairing history is available for a period of only up to 25 days.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

35. The harms caused by Apple's AirTag are ongoing. As of the date of this filing, Apple continues to sell AirTags with safeguards that remain inadequate to protect consumers and the public from unwanted tracking.

**PLAINTIFF'S EXPERIENCE**

36. Plaintiff resides in Medford, Jackson County, Oregon. The stalking and related events described herein occurred in Medford, Oregon.

37. On or about January 6, 2026, Plaintiff discovered a concealed Apple AirTag that had been affixed to the underside of her vehicle by her former romantic partner (the "Stalker"). The Stalker had taped the AirTag to a magnet and placed it under Plaintiff's car, where it was hidden from view.

38. Plaintiff uses an iPhone — Apple's own product and ecosystem. Despite being a user of Apple's iPhone, Plaintiff did NOT receive any notification from Apple alerting her to the presence of an unauthorized AirTag traveling with her vehicle. Apple's notification system, which Apple has marketed as a safeguard against unwanted tracking, failed entirely to protect Plaintiff.

39. Plaintiff's Stalker used the concealed AirTag to track Plaintiff's location on multiple occasions prior to the device's discovery. The stalker was able to monitor Plaintiff's movements, daily patterns, and locations without her knowledge or consent.

40. Plaintiff discovered the AirTag herself during a physical inspection of the underside of her vehicle. Plaintiff did not discover the AirTag as a result of any notification, alert, or safeguard implemented by Apple.

41. The stalking was accompanied by property destruction or other economic loss, and verbal or written threats directed at Plaintiff by the Stalker.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

42. In March 2026, Plaintiff reported the stalking to the Medford Police Department.

43. Following the police report, Plaintiff's stalker was charged with stalking using a GPS device under Oregon law, confirming the criminal nature of the conduct that Apple's product facilitated.

44. A restraining order was issued against Plaintiff's stalker.

45. Plaintiff is currently engaged in related court proceedings arising from the stalking by her former partner.

46. As a direct consequence of the prolonged stalking facilitated by Apple's defective product, the property destruction, the verbal and written threats, and the severe stress of being covertly surveilled by her former partner, Plaintiff has suffered significant physical, emotional, and psychological harm, including but not limited to anxiety, fear, hypervigilance, disruption of daily life, and economic losses.

47. The AirTag's inadequate anti-stalking measures — including the complete failure of Apple's notification system to alert Plaintiff despite her use of an iPhone — directly contributed to Plaintiff's injuries by allowing the stalking to continue undetected over multiple incidents and an extended period of time.

48. But for Apple's design, manufacture, and distribution of the AirTag without adequate anti-stalking safeguards, Plaintiff's Stalker would not have been able to track her covertly, repeatedly, and without detection. The AirTag provided the stalker with an inexpensive, highly effective, and virtually undetectable means of surveilling Plaintiff — capabilities that would not have been available to the stalker absent Apple's product.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

49. Plaintiff was a foreseeable victim of the type of harm that Apple knew its product would cause. Plaintiff is precisely the type of person — a woman stalked by a former romantic partner using a concealed AirTag — whom Apple's safeguards were purportedly designed to protect. Those safeguards failed Plaintiff entirely.

**COUNT I**

**NEGLIGENCE (OREGON LAW)**

50. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

51. Under Oregon law, unless the legislature has limited or foreclosed liability, a defendant owes a duty of care to act in a manner that does not unreasonably create a foreseeable risk of harm to others. *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987). A defendant who creates a foreseeable risk of harm owes a duty to all persons foreseeably endangered by the defendant's conduct.

52. Apple owed Plaintiff a duty of reasonable care in the design, manufacture, marketing, and distribution of AirTags. Apple knew or should have known that AirTags would be — and were being — used as stalking tools and that its anti-stalking safeguards were inadequate to protect foreseeable victims such as Plaintiff. The foreseeability of AirTag-facilitated stalking was well-established by Apple's receipt of over 40,000 stalking reports, warnings from law enforcement agencies and domestic violence advocacy organizations, Apple's own internal data, and media reports brought to the attention of Apple's CEO shortly after the AirTag's release.

53. Apple breached its duty of care by designing, manufacturing, releasing, and continuing to sell AirTags without adequate anti-stalking safeguards, including but not limited to:



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

effective and timely notification systems for all users, including iPhone users; tamper-resistant alert mechanisms; design features to prevent covert placement and continuous nonconsensual tracking; identity verification systems; and the numerous other feasible alternative safeguards described herein.

54. Apple's breach was the actual and proximate cause of Plaintiff's injuries. A third party's criminal conduct does not break the chain of causation where, as here, the criminal act was a foreseeable consequence of the defendant's conduct. Apple's receipt of over 40,000 stalking reports, its own internal data, and its knowledge of widespread AirTag stalking use made the Stalker's criminal conduct a foreseeable consequence of Apple's decision to sell AirTags without adequate safeguards.

55. Apple's failure to implement adequate safeguards directly enabled the stalking to continue undetected. Plaintiff's Stalker placed a concealed AirTag under Plaintiff's vehicle and tracked her on multiple occasions. Despite using an iPhone, Plaintiff received no notification from Apple. The stalking, property destruction, threats, and resulting harm were the direct and foreseeable result of Apple's negligence.

56. As a direct and proximate result of Apple's negligence, Plaintiff has suffered compensable physical, emotional, and psychological injuries, property destruction, economic losses, and other damages in amounts to be proven at trial.

57. Apple's actions — releasing and continuing to sell a product it knew was being used to stalk tens of thousands of victims while failing to implement adequate safeguards and while affirmatively misrepresenting the scope of the problem — demonstrate reckless and outrageous indifference to a highly unreasonable risk of harm. Apple was aware of clear evidence of the



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

substantial risk its product posed, and it consciously *disregarded* that risk for the sake of continued commercial gain.

**COUNT II**

**PRODUCT LIABILITY — DESIGN DEFECT**

**(ORS 30.900, et seq.)**

58. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

59. Apple designs, manufactures, distributes, and sells AirTags within the meaning of Oregon's product liability statutes. ORS 30.900 defines a "product liability civil action" as a civil action brought against a manufacturer, distributor, seller, or lessor of a product for damages for personal injury, death, or property damage arising out of, among other things, any design defect in the product.

60. Under ORS 30.920(2)(b), liability under this section applies even though the injured party has not purchased the product from or entered into any contractual relation with the seller. Plaintiff need not have purchased the AirTag used to stalk her in order to assert this claim against Apple.

61. A product is defective in design under Oregon law if it fails to meet the ordinary expectations of consumers as to safety, or if the risks of the design outweigh its benefits considering feasible alternative designs.

62. The AirTag was defective in design because:

a. Its foreseeable risks of facilitating stalking, domestic violence, and related criminal conduct outweighed its utility as a consumer item-finding device, particularly



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

given the availability of feasible alternative designs that would have preserved the product's legitimate functionality while substantially reducing the risk of stalking;

b. Practical, technologically feasible alternative designs existed at the time of the AirTag's release in April 2021 that would have significantly reduced the risk of stalking without impairing the product's legitimate tracking functionality, including identity verification, tamper-resistant speakers, immediate and reliable alerts, geofencing capabilities, mandatory re-authentication, rate-limiting features, registration systems, and equivalent cross-platform detection for all smartphone users;

c. The AirTag failed to perform as safely as an ordinary consumer would expect, as it enabled covert, continuous location tracking without timely notice or meaningful ability to detect or disable the device, and its notification system — even for iPhone users — failed to provide the protection that Apple represented it would provide.

63. The AirTag's design defect was a substantial factor in causing Plaintiff's injuries. Without Apple's release and continued distribution of an inadequately safeguarded AirTag, the tracking and resulting harm would not have occurred or would have been detected and prevented significantly sooner.

64. Under *Purdy v. Deere & Co*., 281 Or. App. 407 (2016), the doctrine of strict product liability under ORS 30.920 extends to nonusers and bystanders injured as a result of unreasonably dangerous products. A product user's incidental carelessness or failure to discover a product defect is not a defense. Plaintiff, as a stalking victim and nonpurchaser of the AirTag, is within the class of persons protected by Oregon's product liability statute.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

65. The AirTag falls squarely within the scope of products subject to strict liability under Oregon law.

66. As a direct and proximate result of the AirTag's defective design, Plaintiff has suffered compensatory damages, including physical, emotional, and psychological harm, property destruction, economic losses, and other damages in amounts to be proven at trial.

67. Apple had actual knowledge of the AirTag's dangerous propensity to facilitate stalking, yet consciously disregarded the known safety risks and continued to sell the product without implementing feasible safeguards. Apple's conduct demonstrates reckless and outrageous indifference to a highly unreasonable risk of harm.

**COUNT III**

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**

**(ORS 646.608; ORS 646.638)**

68. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

69. ORS 646.608 prohibits unfair or deceptive practices in trade or commerce, including but not limited to misrepresenting the characteristics, uses, benefits, or qualities of goods or services.

70. Apple engaged in unlawful trade practices in violation of ORS 646.608, including but not limited to the following:

a. Apple misrepresented the safety characteristics of the AirTag by marketing it as having anti-stalking safeguards — including notification and detection features — that


**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

were inadequate to protect users and the public from unauthorized tracking, in violation of ORS 646.608(1)(e);

b. Apple misrepresented that the AirTag included effective notification and detection features that would alert users to the presence of an unauthorized AirTag, when Apple knew those features were unreliable, inconsistent, and easily defeated, in violation of ORS 646.608(1)(g);

c. Apple characterized AirTag stalking incidents as "rare" while Apple's own internal data showed over 40,000 stalking reports over a three-year period — a deliberately misleading characterization designed to minimize public concern and maintain product sales;

d. Apple engaged in unconscionable tactics by continuing to sell AirTags with known, inadequate anti-stalking safeguards while concealing the true scope of AirTag-facilitated stalking from consumers and the public, in violation of ORS 646.608(1)(u).

71. Apple's violations of ORS 646.608 were willful. Apple had actual knowledge that its anti-stalking safeguards were inadequate, that its representations about the AirTag's safety features were misleading, and that its characterization of stalking incidents as "rare" was false. Despite this actual knowledge, Apple continued to market and sell AirTags without adequate correction, disclosure, or remediation.

72. Plaintiff suffered ascertainable losses of money or property as a direct result of Apple's unlawful trade practices, including but not limited to costs associated with security measures, restraining order proceedings, property destruction, and other economic losses arising from the stalking facilitated by Apple's defective product.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

73. Under ORS 646.638(1), because Apple's violations were willful, Plaintiff is entitled to recover the greater of actual damages or statutory damages of $200.

74. Under ORS 646.638(3), Plaintiff is entitled to recover reasonable attorney fees and costs incurred in prosecuting this action.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims and issues so triable as a matter of right under the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Apple Inc. and award the following relief:

a. Compensatory damages in an amount to be proven at trial for physical, emotional, and psychological injuries, property destruction, economic losses, and all other compensable damages;

b. Statutory damages under ORS 646.638(1);

c. Reasonable attorney fees and costs pursuant to ORS 646.638(3);

d. Injunctive relief enjoining Apple from continuing to sell AirTags without adequate anti-stalking safeguards sufficient to protect consumers and the public from covert, nonconsensual location tracking;

e. Pre-judgment and post-judgment interest as allowed by law;

f. Costs of suit; and

g. Such other and further relief as this Court deems just and proper.



**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

DATED: September 16, 2026

**TIMBERLINE LAW GROUP, P.C.**

By: */s/ Erick J. Haynie*
**Erick J. Haynie**, OSB No. 982482
Erick@timberlinelawgroup.com
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Telephone: 541.386.6478

**STINAR LANNEN, PLLC**

**Patrick C. Lannen**
280 West Maple, Suite 200
Birmingham, Michigan 48009
Patrick@StinarLannenLaw.com
Office: (248) 565-2690
Fax: (248) 565-2691

*Pro Hac Vice Application Forthcoming*

*Of Attorneys for Plaintiff*